

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



Signed November 7, 2008                                        United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE § | |
| § | CHAPTER 11 |
| TUSA-EXPO HOLDINGS, INC., ET. AL., § | |
| § | CASE NO. 08-45057-DML-11 |
| DEBTORS. § | |
| § | JOINTLY ADMINISTERED |

### MEMORANDUM OPINION

Before the court is the *Debtors' Motion for an Order Authorizing the Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits* (the "Motion")[1] filed by Debtors.[2] The court considered the Motion at a hearing on November 6, 2008 (the "Hearing"). At the Hearing, counsel for the Debtors, counsel for Knoll, Inc., counsel for Textron Financial Corporation, counsel

---

1      The Motion was filed on November 5, 2008 at docket no. 8.

2      The term "Debtors" refers collectively to Tusa-Expo Holdings, Inc. ("Holdings"), Office Expo, Inc. ("Expo") and Tusa Office Solutions, Inc. ("Solutions").

Memorandum Opinion – Page 1

for Andrew Gabehart, and the United States Trustee appeared; however, no objection to the Motion was lodged.

This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). This memorandum opinion embodies the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 9014 and 7052.

## I. Background

Debtors are in the business of selling and distributing office furniture. Solutions operates as a furniture dealer and management company. Prior to filing bankruptcy, Expo sold new and pre-owned office furniture from retail locations in the cities of Farmers Branch and Longview, Texas. The Expo stores were closed prior to the bankruptcy filings. Expo and Solutions are both wholly-owned subsidiaries of Holdings.[3]

On October 31, 2008, and in the following days Debtors each filed a petition for relief under chapter 11 of the Bankruptcy Code (the "Code").[4] By the Motion, Debtors ask that the court authorize them to pay the prepetition (a) wages, salaries, and other compensation;[5] (b) maintenance of employee health insurance, workers' compensation, and other similar benefits; (c) accrued and unused sick leave pay and holiday pay due to their employees as of

---

[3] The background facts stated here are based on the pleadings on record and the representations of counsel at the Hearing.

[4] 11 U.S.C. §§ 101 *et seq.*

[5] The Motion also seeks to pay Administrative Service Provides (as described in the Motion). See Motion at p. 7. The Motion is denied at this time to the extent that the Debtors seek to pay any prepetition claims of Administrative Service Providers.

commencement of their cases; and (d) health insurance premiums[6] which are more fully described in the Motion as "Prepetition Employee Obligations".[7]

It is indisputable Debtors' businesses are labor-intensive. Further, most of Debtors' employees rely on the compensation paid them by Debtors in order to pay their own debts. All the Prepetition Employee Obligations are within the time and amount limits of the priorities afforded for wages and benefits by Code § 507(a)(4) and (5). It is doubtful that Debtors could reorganize successfully were they to suffer a significant exodus of their employees.

## II. Discussion

Though the Motion is unopposed, the court considers this an appropriate occasion to clarify it's rulings in *In re CoServ, L.L.C.*, 273 B.R. 487 (Bankr. N.D. Tex. 2002) and *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003). In each of those cases the court set a high bar for payment of so-called "critical vendors," i.e., creditors holding prepetition unsecured claims against the debtor. Although the court carefully distinguished in *CoServ* between priority wage claims and general unsecured claims, as well as recognizing the particular generically critical character of claims for wages or benefits by employees,[8] the court is concerned lest it be perceived by some that payment of prepetition claims of employees might be subject to undue

---

[6] The Motion also seeks leave to reimburse employee expense claims and to pay other insurance premiums. In the case at bar, the court concludes these expenses meet the *CoServ* test (as described below). The court's analysis that follows, however, is not directed toward these specific items.

[7] The term Prepetition Employee Obligations shall have the same meaning in this Order as it has in the Motion.

[8] *In re CoServ, L.L.C.*, 273 B.R. 487, 493 fn. 10 (Bankr.N.D.Tex.2002).

scrutiny. It is important, in the court's view, that a prospective chapter 11 debtor be confident that, absent a question as to whether continuation of its operations is appropriate, prepetition wage and benefit obligations will continue during chapter 11 to be honored on a timely basis. As discussed below, because there is no objection, the court believes it would be an abuse of discretion not to grant the payment of the priority prepetition wages within the statutory limit as described in the Motion.

**A.     Priority Character**

At the initial stages of a chapter 11 case, the court must be especially concerned with the protection of creditor constituencies that will in later proceedings be represented by committees – principally general unsecured creditors. Indeed, a central concern of courts addressing whether a debtor may pay prepetition claims except under a plan is the likelihood of disparate treatment of similarly situated unsecured creditors. *See In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004); *In re CoServ, L.L.C.*, 273 B.R. 487; *In re Mirant Corp.*, 296 B.R. 427; *In re Equalnet Comm. Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000); *In re CEI Roofing, Inc.*, 315 B.R. 50 (Bankr. N.D. Tex. 2004); *Matter of AWECO, Inc.*, 725 F.2d 293 (5th Cir.1984).

But employees are not situated similarly with other unsecured creditors under the Code. Rather, Congress has given, in section 507(a)(4) and (5), a preferred status to employees' claims. Payment of these claims in advance of dealing with claims having a lesser status does not disadvantage general unsecured creditors, for payment of priority wage (and benefit) claims does not diminish a debtor's estate to the detriment of holders of general unsecured claims.

A number of courts, including this one, have recognized the importance of entitlement to

priority treatment in determining whether a prepetition unsecured claim may be paid at the initial stages of a chapter 11 case. *See In re CoServ, L.L.C.*, 273 B.R. 487; *In re Mirant Corp., 296 B.R. 427*; *In re Equalnet Comm. Corp.*, 258 B.R. 368); *In re CEI Roofing, Inc.*, 315 B.R. 50; *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989).

Only specially situated creditors – *e.g.*, a debtor's lender – would be potentially disadvantaged by payment of claims of employees entitled to priority.[9] Arguably, general unsecured creditors have no interest in whether such priority claims are paid early in a case. Only where the advisability of operation of the debtor's business is itself an issue do general unsecured creditors have possible reason to oppose satisfaction of priority employee claims.

**B.**    *CoServ*

Even if the claims of employees were not entitled to priority, the employees meet the *CoServ* test for payment of their prepetition claims. In *CoServ* this court established a three part test for determining whether prepetition unsecured debt might be paid other than pursuant to a plan[10]:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other

---

9    A debtor's lender is protected by the limits on use of cash collateral, including to pay wage and benefit claims. *See* Code § 363(c)(2).

10   In *Mirant* the court authorized a certain amount of self-policing in applying the *CoServ* test. The court thereby recognized that the exigencies of a case may require a flexible mechanism rather than a prepayment hearing prior to payment for applying the *CoServ* test to meet the peculiar needs – in *Mirant* potential timing issues – of the chapter 11 case.

than by payment of the claim.

*In re CoServ, L.L.C.*, at 498.

Clearly a debtor's employees are among those creditors with whom the debtor must deal. Absent competent personnel, it is doubtful that any debtor would be able to operate its business as contemplated by Code § 1108. Thus, unless there is question about the advisability of a chapter 11 debtor continuing in business, actions to stabilize a debtor's relationship with its employees are critical to one of the principal goals of chapter 11 process: to preserve going-concern value.

While it is true that a debtor may be able to find replacement employees, as a practical matter no debtor can afford to lose very many of its employees, especially in a chapter 11 case's early days. In the first place, hiring a new work force immediately after the filing of a chapter 11 petition will often be difficult, and the debtor can expect the need for incentives, perhaps more costly than payment of prepetition wage and benefit claims, to attract new employees.

Second, continuity of conduct of business is important in a newly filed chapter 11 case. Significant turnover of employees will not only likely lead to operational problems that negatively affect the debtor's business; also in some areas – notably the accounting and in-house legal functions – employee turnover can inhibit a debtor's ability to perform its chapter 11 duties. Employees familiar with the debtor's operations and history will be essential to filing of schedules, anticipating operating requirements, budgeting and many other functions necessary to survival in chapter 11.

Third, even if employees remain with a debtor notwithstanding non-payment of

prepetition wages and benefits, it is probable that their work would be affected by their loss of income. At a minimum, an employee who has not been paid his current wages is likely to be more concerned with personal economic issues than with the debtor's survival. At worst, unpaid compensation may affect motivation, making an employee sluggish, inattentive or even obstructive in the performance of work so adversely affect the chances of a successful reorganization.

In the case at bar, the applicability each of these factors in assessing the necessity of keeping the employees content is apparent. Similarly continuity is essential to Debtors' business. Massive turnover, for obvious reasons, could have disastrous effects not only for Debtors but for the clients they serve as well. For like reasons, the dangers of leaving Debtors' work force dispirited and ill-disposed toward Debtors are manifest. Thus, the court concludes Debtors' employees are creditors whose retention is necessary.

The second prong of the *CoServ* test essentially requires that the court measure against the prepetition debt to be paid the costs that will be incurred (or the benefits that will be lost) if it is not paid. For the reasons already stated, the court concludes that the costs incurred by reason of business disruption and in retaining a new work-force, if the Prepetition Employee Obligations are not timely paid, would in the case at bar (as would be true in most cases) potentially exceed substantially the amount necessary to satisfy the Prepetition Employee Obligations. The court's balancing of economic consequences of one or the other course is reinforced by the substantial likelihood that the Prepetition Employee Obligations, due to Code § 507(a)(4) and (5), will eventually be paid, certainly under any chapter 11 plan (Code §

1129(a)(9)(B)) and most likely in any liquidation under chapter 7 (Code § 726(a)(1)) that may follow an unsuccessful reorganization effort. Thus, the court concludes employee claimants meet the second prong of the *CoServ* test as well.

As to the third test – whether an alternative method exists for continued dealing with the creditor – it seems clear that there is no substitute, from an employee's perspective, for current satisfaction of compensation and benefit claims. Even if it were feasible and less costly it is hardly likely that any employee would be content with a letter of credit or deposit to ensure future wages and benefits. The court therefore concludes that the third prong of the *CoServ* test is met and, under *CoServ*, the Motion would be property granted.

### III.   Conclusion

A central purpose of chapter 11 is to realize on a debtor's going concern value. That going-concern value is dependent in part upon the continuity and performance of the debtor's work force – something particularly true in the case at bar. The continuity and performance of a debtor's work force is, in turn, typically dependent on timely payment of wages and benefits. As claims based on prepetition wages and benefit programs almost always – as is true of the Prepetition Employee Obligations – are entitled to priority payment under section 507(a) of the Code, unsecured creditors are not disadvantaged by early—timely—satisfaction of those claims.

The court consequently concludes that payment of the Prepetition Employee Obligations is consistent with the Code and this court's prior decisions. Indeed, the court concludes and holds that it would be an abuse of its discretion to deny relief of the sort sought in the Motion absent an objection that is sustained. For these reasons, as to the Prepetition Employee

Obligations the Motion is GRANTED.  The court will enter a separate order effecting its ruling.

# # # # END OF MEMORANDUM OPINION # # # #